**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ANYA KISHINEVSKY, M.D.

　　　　　　　　Plaintiff,

-against-

AETNA LIFE INSURANCE COMPANY

　　　　　　　　Defendant.

Civil Action No.:

**COMPLAINT**

Plaintiff Anya Kishinevsky ("Plaintiff"), by and through its attorneys, Gottlieb & Greenspan, LLC, by way of Complaint against Aetna Life Insurance Company ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.　　　Plaintiff is a medical provider with a principal place of business in Connecticut.

2.　　　Upon information and belief, Defendant is engaged in providing and/or administering health care plans or policies in the state of Connecticut.

3.　　　This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the No Surprises Act ("NSA"), 42 U.S.C. § 300gg-111 *et seq*., which governs the Independent Dispute Resolution ("IDR") process for certain out-of-network billing disputes including those at issue here.

4.　　　Venue is proper in the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred within this district.

1

## FACTUAL BACKGROUND

5.      The NSA became effective January 1, 2022. The NSA creates for medical providers a direct right to payment from insurers and health plans of the amount an IDR entity determines is owed for qualifying medical services. *See* 42 U.S.C. § 300gg-111(c)(6). This amount must be paid within thirty (30) days of the IDR entity's determination. *Id*.

6.      Under the NSA, an insurer has 30 days from the date the bill is transmitted by the out-of-network ("OON") medical provider to pay or deny the claim. 42 U.S.C. §300gg-112(a)(3)(A-B). Insurers unilaterally determine their initial payment amount, often paying what the law refers to as a Qualifying Payment Amount ("QPA"). If the OON medical provider does not accept the insurer's initial payment as payment in full, the OON medical provider may initiate an open negotiation period with the insurer to attempt to negotiate a higher amount. *Id*. § (b)(1)(A). If the negotiations fail by the close of the open negotiation period, the OON medical provider may initiate the NSA's IDR process. *Id*. § (b)(1)(B).

7.      However, the medical provider is precluded from billing the patient for any amount over and above the health plan's initial "QPA" payment ("balance billing"). In that way, the NSA ensures that the patient will be protected from liability for "surprise" out-of-network medical charges. *Id*.

8.      Plaintiff is a medical provider that specializes in plastic and reconstructive surgery.

9.      At the time of treatment, each patient referenced herein (the "Patients") was a member of a health plan administered by Defendant.

10.     As an OON medical provider, Plaintiff does not have a network contract that would determine or limit payment for Plaintiff's services to Defendant's members.

2

11.    However, since the medical treatments were rendered in participating network facilities and/or emergently, the Patients' treatments are subject to the reimbursement protocols of the NSA, 42 U.S.C. § 300gg-111 *et seq.*

12.    In each instance, Plaintiff disputed Defendant's initial payment determinations and initiated the open negotiation period called for by the NSA by sending Open Negotiation letters to Defendant.

13.    Because the disputes were not resolved by the close of the open negotiation periods, in each instance Plaintiff initiated the NSA's IDR process by submitting Notices of IDR Initiation to the Department of Health and Human Services to have the proper reimbursement amounts determined by certified IDR entities ("CIDRE"). 42 U.S.C. § 300gg-111(c)(1-5).

14.    In each instance, Plaintiff forwarded a copy of the Notice of Initiation to Defendant as required.

15.    To initiate the IDR process, Plaintiff was required to access the federal IDR portal and affirmatively accept binding click-wrap terms and conditions governing participation in the IDR process.

16.    To participate in the IDR process through the submission of a Notice of Offer, Defendant was required to access the federal IDR portal and accept the same binding click-wrap terms and conditions agreed to by Plaintiff. Specifically, Defendant was required to affirmatively manifest its assent to the terms and conditions of the IDR process by clicking an "I Agree," "Accept," or similarly worded button or checkbox at the bottom of the Notice of Offer.

17.    Those terms required Defendant to agree in part:

   a.    that the final payment determination made by the certified IDR entity is binding upon the parties; and

   b.    to pay the outstanding amount (if any) of the out-of-network rate that is Defendant's responsibility as determined by the certified IDR entity.

18.     Defendant could not proceed with its IDR submission without accepting the terms and conditions set forth in the Notice of Offer.

**Patient I.J.: DISP-2943405**

19.     On July 25, 2024, Plaintiff provided medical treatment to an individual identified as I.J. ("Patient I.J.") at Stamford Hospital in Stamford, Connecticut.

*20.*     After treating Patient I.J., Plaintiff submitted a Health Insurance Claim Form ("HCFA") medical bill to Defendant seeking payment of $13,600.00 for the medical treatment rendered, itemized under the Current Procedural Terminology ("CPT") code 13132.

21.     In response to Plaintiff's HCFA, Defendant denied payment.

22.     Following the initiation of the IDR process, Plaintiff submitted a "Notice of Offer" of $13,600.00 together with documentation that supported Plaintiff's final offer.

23.     Defendant submitted an offer of $0.

24.     On May 15, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-2943405, awarding Plaintiff $13,600.00 for CPT code 13132. *See* **Exhibit A**, attached hereto.

25.     Defendant failed to issue the IDR determination payments to Plaintiff even though its deadline to do so was June 14, 2025.

26.     As of the date of this Complaint, more than 377 days have elapsed since Defendant's deadline to submit the award payments to Plaintiff.

27.     For Patient I.J., Defendant has failed to pay $13,600.00 which is currently due and owing.

**Patient V.M.: DISP-2727980**

28.    On September 23, 2023, Plaintiff provided medical treatment for an individual identified as V.M. ("Patient V.M.") at Greenwich Hospital in Greenwich, CT.

29.    After treating Patient V.M., Plaintiff submitted a HCFA medical bill to Defendant seeking payment of $14,000.00 for the medical treatment rendered, itemized under the CPT code 13152.

30.    In response to Plaintiff's HCFA, Defendant denied payment.

31.    Following the initiation of the IDR process, Plaintiff submitted a Notice of Offer of $14,000.00 together with documentation that supported Plaintiff's final offer.

32.    Defendant submitted an offer of $0.

33.    On May 20, 2025, the CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-2727980, awarding Plaintiff a total of $14,000.00 for CPT code 13152. *See* **Exhibit B**, attached hereto.

34.    However, Defendant failed to issue the IDR determination payment to Plaintiff even though its deadline to do so was June 19, 2025.

35.    As of the date of this Complaint, more than 372 days have elapsed since Defendant's deadline to submit the award payment to Plaintiff.

36.    For Patient V.M., Defendant has failed to pay $14,000.00 which is currently due and owing.

**Patient R.H.: DISP-2702687**

37.    On October 23, 2023, Plaintiff provided medical treatment for an individual identified as R.H. ("Patient R.H.") at Stamford Hospital in Stamford, Connecticut.

38.    After treating Patient R.H., Plaintiff submitted a HCFA medical bill to Defendant seeking payment of $12,200.00 for the medical treatment rendered, itemized under the CPT code 13131.

39.    In response to Plaintiff's HCFA, Defendant denied payment.

40.    Following the initiation of the IDR process, Plaintiff submitted a Notice of Offer of $12,200.00 together with documentation that supported Plaintiff's final offer.

41.    Defendant submitted an offer of $0.

42.    On May 22, 2025, the CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-2702687, awarding Plaintiff a total of $12,200.00 for CPT code 13131. *See* **Exhibit C**, attached hereto.

43.    However, Defendant failed to issue the IDR determination payment to Plaintiff even though its deadline to do so was June 21, 2025.

44.    As of the date of this Complaint, more than 370 days have elapsed since Defendant's deadline to submit the award payment to Plaintiff.

45.    For Patient R.H., Defendant has failed to pay $12,200.00 which is currently due and owing.

**Patient A.N.: DISP-2711882**

46.    On July 28, 2023, Plaintiff provided medical treatment for an individual identified as A.N. ("Patient A.N.") at Stamford Hospital in Stamford, Connecticut.

47.    After treating Patient A.N., Plaintiff submitted a HCFA medical bill to Defendant seeking payment of $14,000.00 for the medical treatment rendered, itemized under the CPT code 13152.

48.    In response to Plaintiff's HCFA, Defendant denied payment.

6

49. Following the initiation of the IDR process, Plaintiff submitted a Notice of Offer of $14,000.00 together with documentation that supported Plaintiff's final offer.

50. Defendant submitted an offer of $0.

51. On May 27, 2025, the CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-2711882, awarding Plaintiff a total of $14,000.00 for CPT code 13152. *See* **Exhibit D**, attached hereto.

52. However, Defendant failed to issue the IDR determination payment to Plaintiff even though its deadline to do so was June 26, 2025.

53. As of the date of this Complaint, more than 364 days have elapsed since Defendant's deadline to submit the award payment to Plaintiff.

54. For Patient A.N., Defendant has failed to pay $14,000.00 which is currently due and owing.

55. Accordingly, Plaintiff seeks herein all unpaid past due IDR determinations (the "Awards") as of the date the Court issues judgment, including interest, penalties and collection costs, which are in no event less $53,800.00.

## COUNT ONE

### CONFIRMATION OF IDR DETERMINATIONS

56. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 of the Complaint as though fully set forth herein.

57. The NSA provides that "A determination of a certified IDR entity under subparagraph (A)—(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; . . ." 42 U.S. Code § 300gg-111(c)(5)(E)(i).

58.     Defendant did not present any facts to the IDR entities concerning an alleged fraudulent claim or misrepresentation of facts.

59.     Defendant did not move to vacate any of the Awards under 9 U.S.C. § 10(a)(1)-(4) as provided for in the NSA.

60.     Defendant failed to issue the IDR determination payments in satisfaction of the Awards.

61.     Confirmation of the Awards does not require judicial review of the factual or legal findings of the IDR determination.

62.     Absent a motion to vacate, the Awards must be confirmed. *See Agag v. Cigna Health and Life Insurance Co.,* No. 3:25-cv-00498, 2026 U.S. Dist. LEXIS 82515 (D. Conn. April 15, 2026).

63.     It is against equity and good conscience to deprive Plaintiff a remedy to enforce "binding" Awards issued in accordance with federal law.

64.     Accordingly, Plaintiff brings this action for an Order confirming the IDR Awards.

## COUNT TWO

### VIOLATION OF THE FEDERAL NO SURPRISES ACT REGARDING THE NON-PAYMENT OF BINDING AWARDS
### (*in the alternative*)

65.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66.     A party is permitted to initiate the IDR process called for by the NSA if the parties are unable to agree on a payment rate during the NSA's negotiation period. 42 U.S.C. § 300gg-111(c)(1-5).

67.     In the instant case, the parties were unable to agree on the out-of-network rate for the services provided, and the parties therefore proceeded to arbitration as called for by the NSA.

68.   EdiPhy Advisors, L.L.C. issued the following determinations:

a.   awarded Plaintiff $13,600.00 on May 25, 2025, in DISP-2943405;

b.   awarded Plaintiff $14,000.00 on May 20, 2025, in DISP-2727980;

c.   awarded Plaintiff $14,000.00 on May 27, 2025, in DISP-2711882;

69.   On May 22, 2025, C2C Innovative Solutions, Inc., the CIDRE entity assigned to DISP-2702687, awarded Plaintiff $12,200.00.

70.   According to the NSA, Defendant had thirty (30) days to remit the IDR determination payments to Plaintiff. 42 U.S.C. § 300gg-111(c)(6).

71.   Defendant failed to make any of the payments within thirty (30) days and, as of the date of the filing of this Complaint, Defendant has failed to remit the IDR determination payments to Plaintiff.

72.   As such, Defendant has failed to comply with the requirements of the NSA.

73.   Accordingly, due to Defendant's failure to comply with the NSA's requirements, Plaintiff has been damaged in the amount of $53,800.00.

## COUNT THREE

### BREACH OF EXPRESS CONTRACT (CLICK-WRAP)
### (*in the alternative*)

74.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 73 of the Amended Complaint as though fully set forth herein.

75.   Plaintiff initiated the NSA's IDR process by submitting a Notice of IDR Initiation to the Department of Health and Human Services via the NSA's federal IDR portal.

76.   Thereafter, the parties were presented with IDR participation terms, including the federal IDR portal's Terms of Use and the CIDRE's participation agreement, which required the

parties' consent to be bound by the CIDRE's final payment determination and to pay the amount determined by the CIDRE. Each party was required to accept the NSA's IDR participation terms prior to submitting an IDR offer, uploading documents and proceeding with the IDR.

77.     Defendant provided affirmative consent to the IDR's participation terms by checking a box and/or clicking "I agree."

78.     The parties' mutual agreement to accept and comply with the CIDRE's determination is sufficient consideration.

79.     The CIDRE issued a written final determination in DISP-2943405 awarding Plaintiff $13,600.00 for the medical services Plaintiff rendered to Defendant's member.

80.     The CIDRE issued a written final determination in DISP-2727980 awarding Plaintiff $14,000.00 for the medical services Plaintiff rendered to Defendant's member.

81.     The CIDRE issued a written final determination in DISP-2711882 awarding Plaintiff $14,000.00 for the medical services Plaintiff rendered to Defendant's member.

82.     The other CIDRE issued a written final determination in DISP-2702687 awarding Plaintiff $12,200.00 for the medical services Plaintiff rendered to Defendant's member.

83.     Under the express terms of the click-wrap agreement, Defendant was required to pay the Awards.

84.     Defendant failed to pay the Awards.

85.     To date, Defendant has not paid the Awards.

86.     The NSA does not preempt a claim for breach of contract. *See Mod. Orthopaedics of NJ v. Premera Blue Cross*, Case No. 2:25-cv-01807 (BRM) (JSA), 2025 U.S. Dist. LEXIS 215824, at * 32 (D.N.J. Nov. 3, 2025) (citing *Kennedy v. UnitedHealth Grp. Inc.*, No. 25 CIV. 432, 2025 U.S. Dist. LEXIS 117870, 2025 WL 1725147, at * 8-9 (S.D.N.Y. June 20, 2025)

(holding breach of contract and unjust enrichment claims for failure to pay for patient's emergency care were not preempted by the NSA).

87.    The click-wrap agreement constitutes a valid, express contract under Connecticut law, supported by mutual consideration, including Plaintiff's opportunity to obtain binding dispute resolution and Defendant's participation in the NSA's IDR process and agreement to be bound by the outcome.

88.    Defendant breached the express click-wrap contract by failing to pay the amount determined by the CIDREs.

89.    Defendant's failure to pay the Awards constitutes a material breach of contract.

## COUNT FOUR

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (*in the alternative*)

90.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 89 of the Complaint as though fully set forth herein.

91.    The click-wrap agreement constitutes a valid, express contract under Connecticut law governing the parties' agreement to participate in the NSA's IDR process and to pay the Awards as determined by the CIDREs.

92.    Defendant acted in bad faith by refusing to pay the Awards as determined by the CIDREs despite its agreement to be bound by the CIDRE's final payment determination.

93.    Defendant's conduct was undertaken to avoid its payment obligations and to delay or frustrate Plaintiff's right to receive payment.

94.    Defendant's actions deprived Plaintiff of the benefit of its bargain.

95.    Plaintiff suffered damages in the unpaid Awards as determined by the CIDREs.

11

## COUNT FIVE

### THIRD-PARTY BENEFICIARY
### (*in the alternative*)

96.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 95 of the Complaint as though fully set forth herein.

97.     The IDR process established under the NSA requires both providers and insurers to enter into binding agreements with the Centers for Medicare and Medicaid Services ("CMS") as a condition of participation.

98.     These agreements require both parties to be bound by the payment of CIDRE determinations.

99.     The click-wrap agreement with CMS for the IDR process is expressly intended to benefit both healthcare providers and healthcare insurance carriers by ensuring fair and enforceable reimbursement for medical services rendered.

100.    The requirement that providers who prevail in the IDR process be paid in accordance with IDR determinations demonstrates that healthcare providers were intended, not incidental, beneficiaries of Defendant's click-wrap agreement.

101.    Plaintiff is a member of the class of intended beneficiaries of Defendant's click-wrap agreement with CMS.

102.    Defendant's refusal to comply with the binding IDR determinations frustrates the purpose of the click-wrap agreement and deprives Plaintiff of the benefits intended to be conferred.

103.    Accordingly, Plaintiff is entitled to enforce Defendant's obligations as an intended third-party beneficiary.

## COUNT SIX

### DECLARATORY JUDGMENT
*(in the alternative)*

104.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 103 of the Complaint as though fully set forth herein.

105.    An actual and present controversy exists between Plaintiff and Defendant concerning Defendant's obligation to pay the Awards as determined by the CIDREs.

106.    By refusing to pay the Awards despite demands, Defendant seemingly contends that it is not required to do so, or that payment may be delayed or avoided, notwithstanding the CIDREs' final determinations.

107.    Defendant is obligated to pay the amounts determined by the CIDREs and there is no appeal, complaint, or administrative process that stays Defendant's payment obligations.

108.    A declaratory judgment would resolve the parties' dispute and clarify their respective rights and obligations.

109.    Plaintiff seeks a declaration that Defendant is obligated to pay the Awards as determined by the CIDREs in full and without delay.

## COUNT SEVEN

### ACCOUNT STATED
*(in the alternative)*

110.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 109 of the Complaint as though fully set forth herein.

111.    Plaintiff rendered medical treatment to Defendant's members for which Defendant was financially responsible.

13

112.   Plaintiff submitted HCFAs to Defendant reflecting amounts due for the medical treatment it rendered to Defendant's members.

113.   After the parties failed to resolve the payment dispute at the close of the open negotiation periods as described herein, Plaintiff initiated the NSA's IDR process.

114.   The CIDREs issued written final determinations establishing the amount Defendant owed to Plaintiff for the medical services it rendered to Defendant's members.

115.   Defendant received the CIDREs' written final determinations and did not move to vacate any of the Awards, as provided for under the under the parameters described in paragraphs (1) through (4) of section 10(a) of title 9. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

116.   Defendant's failure to seek recourse under 9 U.S.C. § 10(a) constitutes an implied agreement that the CIDREs final determinations pursuant to the Awards are correct.

117.   Defendant has failed to pay the Awards as determined by the CIDREs.

## COUNT EIGHT

### QUANTUM MERUIT
### (*in the alternative*)

118.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 117 of the Complaint as though fully set forth herein.

119.   Plaintiff conferred a valuable benefit upon Defendant by providing good faith medical services to Defendant's members at Plaintiff's expense, with the reasonable expectation of payment.

120.   Defendant accepted and retained the benefit from the medical services Plaintiff provided as its members received medical services under the health plan Defendant administers.

121.   Defendant had a reasonable expectation that Plaintiff expected payment for the medical services provided to Defendant's members as it received HCFAs from Plaintiff that set

14

forth the amount billed for the medical services provided. Defendant appreciates, realizes and knows that Plaintiff expected payment for the medical services provided to its members because it issued Explanation of Benefit forms ("EOB").

122.    The final determinations made by the CIDREs reflect an objective, federally regulated assessment of the reasonable value for the medical services Plaintiff rendered to Defendant's members.

123.    Defendant has failed to pay the Awards as determined by the CIDREs, or any amount approximating the reasonable value for the medical services Plaintiff rendered to Defendant's members.

124.    It would be unjust and inequitable for Defendant to retain the benefit of Plaintiff's medical services without paying the reasonable value as determined by the CIDREs.

125.    Plaintiff is therefore entitled to recover under the doctrine of quantum meruit the reasonable value of the services rendered as determined by the CIDREs.

## COUNT NINE

### UNJUST ENRICHMENT
### (*in the alternative*)

126.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 125 of the Complaint as though fully set forth herein.

127.    Defendant received the benefit of the underlying medical services Plaintiff rendered to Defendant's members. These medical services were provided at Plaintiff's expense and under circumstances that would make it unjust for Defendant to retain the benefit without commensurate compensation.

128.    Defendant had reasonable notice that Plaintiff expected payment for the benefits conferred as it received HCFAs from Plaintiff that set forth the amount billed for the medical

services Plaintiff rendered to Defendant's members. Defendant appreciates, realizes and knows that the benefit was conferred because it issued EOBs. Thus, there was a direct connection between Plaintiff's impoverishment and Defendant's enrichment.

129.    The dispute over the value of the benefits received was resolved in accordance with the NSA's IDR process, which requires the non-prevailing party to issue payment within 30 days of the determination made by the CIDREs.

130.    The NSA does not preempt a claim for unjust enrichment. *See Mod. Orthopaedics of NJ v. Premera Blue Cross*, Case No. 2:25-cv-01807 (BRM) (JSA), 2025 U.S. Dist. LEXIS 215824, at * 32 (D.N.J. Nov. 3, 2025) (citing *Kennedy v. UnitedHealth Grp. Inc.*, No. 25 CIV. 432, 2025 U.S. Dist. LEXIS 117870, 2025 WL 1725147, at * 8-9 (S.D.N.Y. June 20, 2025) (holding breach of contract and unjust enrichment claims for failure to pay for patient's emergency care were not preempted by the NSA)). Indeed, at least one federal court has indicated that the proper remedy for a medical provider to recover unpaid IDR awards issued against an insurance carrier is in fact unjust enrichment. *See Modern Orthopaedics*, 2025 U.S. Dist. LEXIS 215824, at * 31-32 ("the NSA . . . says nothing that would preclude a provider from bringing suit under traditional state law causes of action . . . like unjust enrichment.").

131.    Defendant improperly retained the benefits under the plans without payment to Plaintiff.

132.    Defendant has continued to improperly retain the required payment for the services Plaintiff rendered to its members beyond the 30-day deadline, which allowed it to become further unjustly enriched by receiving interest and/or investment income because of the unlawful retention of the funds, which were unquestionably owed to Plaintiff.

133.    It is against equity and good conscience to deprive Plaintiff of the funds Defendant owes, as determined by the CIDREs in accordance with federal law.

134.    Plaintiff hereby seeks payment of the Awards as determined by the CIDREs as well as all benefits obtained by Defendant because Defendant did not timely pay the amounts owed, including without limitation the interest or investment income generated by such funds.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A.    For an Order confirming the IDR award in DISP-2943405;

B.    For an Order confirming the IDR award in DISP-2727980;

C.    For an Order confirming the IDR award in DISP-2702687;

D.    For an Order confirming the IDR award in DISP-2711882;

E.    For Judgment in the amount of $53,800.00;

F.    Declaratory relief as requested;

G.    Pre- and post-judgment interest;

H.    Costs of suit; and

I.    For such other and further relief as the Court may deem just and equitable.

Dated: June 25, 2026

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*

By:    /s/ *Michael Thomas, Jr.*
Michael Thomas, Jr., Esq.
17-17 Route 208, Suite 250
Fair Lawn, New Jersey 07410
(201) 735-0845
mthomas@gottliebandgreenspan.com

17